THE VILLAGE OF GLENCOE, Appellee, *vs.* GERTRUDE UTHE *et al.* Appellants.

*Opinion filed February 23, 1912—Rehearing denied April 3, 1912.*

1. SPECIAL ASSESSMENTS—*when finding that ordinance was not unreasonable will be upheld.* A finding that a sidewalk ordinance is not unreasonable in requiring cement walks instead of cinder walks will be upheld on appeal, where, though the evidence is conflicting, its weight is not clearly contrary to the finding.

2. SAME—*a sidewalk assessment is spread on basis of benefits.* Under the Local Improvement act an assessment for the construction of sidewalks should be spread according to benefits, without regard to the number of feet fronting on the proposed improvement; and the fact that inside lots may thus be compelled to bear part of the burden of constructing the walks along corner lots is not a valid objection, if the inside lots are not assessed more than they are benefited nor more than their proportionate share of the cost of the improvement.

3. SAME—*lots benefited may be assessed though previously assessed for other walks.* The fact that certain lots in the district where a system of sidewalks is to be constructed already have sidewalks in front of them for which they have been assessed and which are not to be replaced by the proposed improvement, does not preclude their being assessed if they, in fact, receive additional benefits from the construction of other sidewalks in the district.

4. SAME—*the fact that owners cannot construct walks does not preclude assessment of lots.* The fact that lot owners cannot relieve their lots from the assessment by constructing the walks, as permitted by the statute, because the walks in front of their property are already constructed, does not relieve their lots from liability to an assessment for the benefits they will receive from the construction of the other sidewalks in the locality.

5. SAME—*public hearing is necessary if sidewalk ordinance requires construction of berme.* A berme of earth is not a part of a

cement sidewalk, and if the ordinance requires the construction of a berme as well as the sidewalk the improvement is not one for sidewalks, only, but is one which requires a public hearing.

6. SAME—*benefits cannot be assessed for part of improvement not described in ordinance.* If the ordinance for the construction of sidewalks around a certain addition fails to provide for the intersections at the corners of such addition no assessment therefor can be made, even though made as public benefits and though the estimate for the total number of square feet of sidewalk to be constructed included such intersections, which were also treated as part of the improvement in spreading the assessment.

APPEAL from the County Court of Cook county; the Hon. JOHN E. OWENS, Judge, presiding.

DANIEL S. WENTWORTH, for appellants.

GORDON A. RAMSEY, (MORTON T. CULVER, and ALBERT O. OLSON, Village Attorney, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

The county court of Cook county entered a judgment at the June term, 1911, overruling the legal objections to and confirming a special assessment against the property of appellants for the construction of a system of sidewalks in Uthe's addition to the village of Glencoe. The proposed improvement was for the construction of a cement sidewalk five feet wide around blocks 1, 2, 3, 4, 5 and 6, except on the north side of blocks 3 and 4, along which a sidewalk had been previously constructed. The proceedings were under the Local Improvement act, the costs to be paid by special assessment upon the property benefited. Appellants have prosecuted an appeal to this court.

It is first contended that the ordinance is unreasonable in providing for a cement sidewalk when a cinder sidewalk at one-fourth the cost would bring the same benefits. Uthe's addition is used for residence purposes, only. It consists of six blocks, lying south-west of the Chicago and

Northwestern railroad. It is not thickly populated, there being but nineteen houses on the six blocks, the most of them being small dwelling houses costing about $500. According to the testimony lots sell at $300, and the market value of an entire block is $4500. L. H. Lloyd, a witness for appellants, testified that the lots along which the walk was to be constructed in front, only, would be benefited from $15 to $20, or about the cost of a cinder walk, and that corner lots would be benefited about $50. He further testified that block 1 is all owned by one person and that its market value would not be increased by the improvement. Other witnesses for appellants testified that the lots along which the walk had been already constructed would not be benefited. Witnesses for appellee fixed the amount of benefits at substantially the amount assessed. All the witnesses agree that the corner lots would be benefited more than the inside lots, most of them fixing the benefit at two or two and one-half times the benefit received by the inside lots. As is usually the case in proceedings of this kind, the testimony is conflicting. Opposed to the testimony of L. H. Lloyd that the lots would not be benefited more than $15 or $20 is the testimony of three witnesses for appellee that the lots would be benefited the amount assessed, one placing the benefits at much more than the assessment. In the face of this testimony we cannot say that the court erred in overruling the objections that the ordinance was unreasonable.

Appellants contend that the cost of making the improvement was improperly and unequally distributed. According to location with reference to the proposed improvement and the amount assessed, the lots may be divided into four classes: (1) Inside lots fronting on the proposed sidewalk to have the walk built along the front, only, and which were each assessed $64.30; (2) corner lots to have the walk built along one side, only, and which were each assessed $81.10; (3) corner lots to have the walk built

along one side and front, and which were each assessed $125.27; and (4) lots not abutting on the proposed improvement, along which walks had been previously constructed, and which were each assessed $16.60.

The assessment was spread on the theory that all the property benefited by the improvement should be assessed in proportion to the benefits received, in the same manner as street pavements and other improvements, without regard to frontage or whether or not walks had been previously constructed. It is contended by appellants that the assessment to build a sidewalk is not made on the same theory as in street paving; that the effect of the assessment as spread is to assess the inside lots for a portion of the cost of constructing the walks along the corner lots and for the intersections; also that lots not abutting on the proposed improvement should not have been assessed.

The only difference in the application of the Local Improvement act to the construction of a sidewalk and to a street pavement, or other improvement is in the provision contained in section 34 of the said act which provides: "Whenever any ordinance shall provide only for the building or renewing of any sidewalk, the owner of any lot or piece of land fronting on such sidewalk shall be allowed forty (40) days after the time at which said ordinance shall take effect in which to build or renew such sidewalk opposite to his land, and thereby relieve the same from assessment." This provision does not change the method of spreading the assessment provided in section 39 of said act, in which it is made the duty of the officer who spreads the assessment to estimate what proportion of the total cost will be of benefit to the public and the property and to apportion it accordingly, no property to be assessed a greater amount than it is benefited. In a special assessment proceeding the assessment must be made in proportion to the benefits received, without regard to the number of feet fronting on the improvement. This applies to the con-

struction of a sidewalk as well as to street paving and other improvements. The effect of spreading the assessment in this manner may be to compel the inside lots to bear a part of the burden of building the walk along the corner lots, but that cannot be urged as an objection to the assessment on the inside lots so long as they are not assessed more than they are benefited or more than their just proportion of benefits. The principle applied in *Village of Downers Grove* v. *Findlay,* 237 Ill. 368, that corner lots must be assessed in proportion to the benefits received, the same as inside lots, is applicable to this case. The testimony shows that the benefits were properly apportioned between the corner lots and inside lots in this case.

Along the front of lots 2 to 11, in blocks 3 and 4, a sidewalk was constructed previous to the commencement of this proceeding, and it is contended by appellants that since the owners of those lots cannot construct the sidewalks and relieve the lots from assessment they should not be assessed. The provision in section 34 applies only to lots "fronting on such sidewalk," and as those lots do not front on the sidewalk proposed to be constructed it has no application to them. Although those lots may have been assessed at the time the sidewalk along them was constructed, that is no objection to an assessment for this improvement if they are benefited by it. Section 54 of the Local Improvement act provides: "It shall be no objection to the legality of any local improvement that a similar one shall have been previously made in the same locality, if the ordinance therefor be recommended by the board of local improvements, as above provided." These lots were assessed at the time the walk was constructed, but if additional benefits are received by the connection of other walks to those already constructed an assessment may be made for those benefits.

The ordinance provides that the sidewalk should be five feet wide and the inside edge parallel with and two feet

from the street or property line. A sub-foundation was required by cutting down or filling up the natural surface, so that when the sidewalk was finished its surface along the center line thereof should conform to the grade established. Upon the sub-foundation was to be placed a layer of cinders five and one-half inches deep along the center line and six and one-half inches deep at the edges, after having been thoroughly flooded with water and compacted. Upon the cinders the cement walk was to be built from three and one-half to four and one-half inches thick. "Wherever filling is necessary to bring such sub-foundation to sub-grade, it shall be done with earth or other material equally as good for filling purposes, free from animal and vegetable matter, and in such a manner as to leave a berme of twelve (12) inches on each side of and flush with the top of the cinder foundation hereinafter provided for, and shall slope to the surface of the ground at the rate of one and one-half (1½) feet horizontal to one (1) foot vertical, and said filling shall be thoroughly compacted until solid and unyielding: *Provided, however,* that the slope of the side of such filling nearest to the property or street line, where necessary, shall be increased sufficiently and such side made as near vertical as shall be necessary to keep such filling entirely within the street." Appellants contend the berme or embankment on each side of the walk was no part of the walk, and that as no public hearing was had it was erroneous to confirm the assessment. The assessment was made and confirmed upon the theory that the whole of the improvement was a sidewalk, and if it was, no public hearing was required by the statute. Frank A. Windes, a civil engineer of fifteen years' experience, testified he was familiar with the proposed improvement, its location and the nature of the soil; that the berme was for a retaining wall to hold the cinder foundation in place and prevent its disintegrating, sloughing off and leaving no filling under the edges of the walk. The berme was to be made of the earth removed

from excavations, and was adopted because it was much less expensive than a plank or concrete curb retaining wall.

In *People* v. *Klehm,* 238 Ill. 89, and *City of Chicago* v. *Bassett,* 238 id. 412, the question whether an embankment on the sides was part of a sidewalk was presented. In the *Klehm case* the walk was to be constructed of cinders and the proceeding was under the Sidewalk act of 1875. There was to be a wooden curb on each side and the cinder walk was to be constructed between the two curbs. The curbing was to be back-filled with earth in such manner as to leave a berme six inches wide on each side of and flush with the top of the sidewalk, with a slope to the natural surface of the ground at the ratio of one foot horizontal to one foot vertical. The court held "the berme and sloping embankment are not a part of the sidewalk." In the *Bassett case* the ordinance provided for building a cinder sidewalk between wooden curbs, with a berme on each side of the walk flush with the surface of the walk and six inches in width at the top. The city insisted that the improvement, as a whole, was a sidewalk. The court said: "This improvement, as a whole, is not within the language of the proviso upon which the city relies." The court held that the case could not be distinguished from the *Klehm case,* on the ground that in that case the sidewalk was to be built under the Sidewalk act of 1875 and in the *Bassett case* the proceeding was under the Local Improvement act. "That which is no part of a sidewalk within the meaning of the Sidewalk act is no part of a sidewalk within the meaning of the proviso here relied upon."

In *People* v. *Patton,* 223 Ill. 379, the proceeding was for the construction of a cement sidewalk under the act of 1875. The ordinance provided for banking earth against the walk level with the top of the walk and extending two feet from its sides, sloping downward at the ratio of one-half foot horizontal to one foot vertical to the natural surface of the ground, the filling to be smoothed off with rakes

to a smooth surface. It was held the embankments were no part of the sidewalk. If the case at bar could be distinguished from the *Klehm case* and the *Bassett case*, as contended by counsel for appellee, it cannot be distinguished from the *Patton case*. In that case, as in the case before us, there were no wooden curbs or other retaining walls than the earth embankment. If the embankment in the *Patton case* was no part of the sidewalk the embankment in this case would not be part of the sidewalk. It was erroneous, therefore, to confirm the assessment without having had a public hearing.

It is further contended that there is a variance between the ordinance and the estimate of cost. The ordinance under which the improvement was made failed to provide for the intersections, five feet square, at the north-east, north-west, south-east and south-west corners of Uthe's addition. The description of the improvement in the estimate of cost is the same as in the ordinance, but in estimating the total number of square feet of walk to be laid these intersections were included and were also considered as part of the improvement in spreading the assessment. An assessment for benefits to the public was made but the amount assessed is not shown by the record in this case. The officer who spread the assessment testified that the assessment for public benefits was made to cover the cost of these intersections. The assessment for public benefits is made on the theory that the public is benefited by the entire improvement, and it cannot be said that the assessment for public benefits in this case was for the purpose of constructing the intersections. Besides, the officer who spreads the assessment cannot enlarge the improvement by assessing the additional cost as public benefits. While it is not required that the estimate of costs and the ordinance be in all respects identical, it is necessary that the improvement be constructed as described in the ordinance, and no benefits can be assessed to either the public or property owner for

any portion of an improvement not described in the ordinance. The objection should have been sustained.

For the errors indicated the judgment is reversed and the cause remanded.        *Reversed and remanded.*