## Erie, to Use, Appellant *v.* Brady, Owner.

[Marked to be reported.]

*Municipalities—Paving—Items—Ordinance—Act*, 1876.

Under the Act of May 1, 1876, P. L. 94, providing that councils of cities other than those of the first class shall not pass ordinances authorizing grading or paving of streets before the city engineer has made " an estimate of the cost, particularly stating the items and the cost of each," a statement giving the contractor's lump price for the finished pavement, distributing the cost of work and materials in one sum over the surface of the finished roadway at a fixed price per foot, is not sufficient, and the ordinance authorizing such improvement is void.

*Repealing statute—Retroactive—Act of May 27,* 1889.

The Act of May 27, 1889, repealing the Act of 1876, will not have the effect of validating such void ordinance under the Act of 1876, or of permitting a recovery of the claim for paving.

Argued April 26, 1892. Appeal, No. 268, Jan. T., 1892, by plaintiff, Erie City, to use of Barber Asphalt Paving Co., from judgment of C. P. Erie Co., Feb. T., 1887, No. 21, on verdict for defendant, John C. Brady, assignee, owner or reputed owner. Before PAXSON, C. J., STERRETT, WILLIAMS, MC-COLLUM and HEYDRICK, JJ.

Sci. fa. sur municipal claim or street improvements.

The facts appear by the opinion of the Supreme Court.

The court, GUNNISON, P. J., refused plaintiff's request to charge that (1) as the Act of 1876 was repealed, an estimate by the engineer was not required, and (2) the estimate made complied with the Act of 1876 ; and affirmed defendant's points that (3) as the Act had not been complied with the ordinance was void, and the verdict should be for defendant, and (4) the estimate, reciting it, was not in compliance with the Act, the ordinance was void and plaintiff could not recover.

Verdict and judgment for defendant. Plaintiff then appealed.

*Errors assigned* were (1–4) rulings on points, quoting them, and (5) taking case from jury and instructions for defendant.

*F. F. Marshall* and *Theodore A. Lamb*, for appellant.—The defence was purely technical. The work was well done and a great improvement to the property. Defendant permitted it

to be done without dissent. An estimate was made by the engineer, which was the actual cost, including the grading, etc. The assessment to each owner, etc., was attached to the ordinance before it was passed. This gave the property-owners notice of the approximate cost, which was a substantial compliance with the Act of May 1, 1876, P. L. 94. The act could not mean an estimate of all the items. .

The Act of 1876 was repealed expressly by the Act of May 27, 1889, P. L. 387, and this case must be decided as the law stands when judgment is rendered: Sedgwick, Con. St. 107–8; Key v. Goodwin, 4 M. & P. 341; Cooley, Con. Lim. 381; Satterlee v. Matthewson, 16 S. & R. 169; Grim v. Weissenberg School Dist., 57 Pa. 433; Hampton v. Com., 19 Pa. 329. The purpose of the Act of 1889, as shown by the preamble, was to stop property-owners from setting up the Act of 1876 to defeat a recovery.

*S. A. Davenport*, for appellee.—The Act of 1876 requires the estimate to state the items for grading and paving. There was no calculation of the grading nor any " estimate " of the paving, but simply a statement of the bid of plaintiff company. There could therefore be no statement of the items and the ordinance was void by the express terms of the act.

The Act of 1889 simply repealed the Act of 1876, it did not breathe life into dead ordinances. If it had been so intended, the act would have been as in Shenley v. Allegheny, 36 Pa. 29. No statute is held to operate retrospectively unless its language admits of no other construction: Neff's Ap., 21 Pa. 247. Where a law is in its nature a contract, and rights vested under it, a retrospective law, if constitutional, would not be extended by liberal construction, nor construed by general words to embrace cases where actions are brought; it would be confined to future actions: Underwood v. Lilly, 10 S. & R. 101.

OPINION BY MR. JUSTICE WILLIAMS, July 13, 1892.

This case arises under the act of assembly relating to cities of the third class, which was approved on the first day of May, 1876. The act declared that no city of the third class should, after the passage of the act, pass any ordinance authorizing the grading or paving of any street, lane or alley until it had first caused the city engineer to make an estimate of the total

cost of the proposed improvement "particularly stating the items and the cost of each," necessary to the making of the improvement proposed. It further declared that any ordinance passed without such preliminary estimate, authorizing the grading, paving or curbing of any street, lane or alley, should "be null and void and of no effect." This act was repealed in 1889; but in 1886 while it was in full force the city of Erie passed an ordinance providing for the grading, paving and curbing of Eighth street in said city. The ordinance directed that the space between the rails of the passenger railway occupying the middle of the street, and for the breadth of one paving stone on each side of the track should be paved with Medina stone. The carriage way on each side of the railway should be paved with street asphaltum. The curbing should be put so as to give a breadth of thirty-two feet to the paved surface of the street including the track of the passenger railway. The culverts, catch basins and man-holes were to be substantially made and in accordance with specifications. Under this ordinance the work was contracted for by the Barbar Asphalt Pavement Company, and has been done.

It is not now alleged that the work is defective, but that the ordinance is void for want of a preliminary estimate by the city engineer showing particularly the items necessarily entering into this work, and the estimated cost of each. The reply of the city is that a preliminary estimate was made, which is a substantial compliance with the Act of 1876, before the passage of the ordinance; and a paper was put in evidence having the signature of the city engineer and entitled "approximate estimate of quantities and cost of an asphalt pavement in Eighth street." This paper contained two items, viz.: amount of surface to be paved with stone with cost of completed pavement per foot; amount of surface to be paved with asphaltum with cost of completed pavement per foot. These two sums aggregate $59,214, to which some costs are added, making a total of $60,214. These sums, as the evidence shows, were the prices furnished to the engineer by the pavement company as their lump prices for doing the whole work, including grading, curbing, the culverts, catch-basins and man-holes, as well as the paving, and the stone and asphaltum and other materials to be used.

Our question is, was this a compliance with the Act of 1876? The act required an estimate of the total cost of the proposed improvement that should show the items and the cost of each particularly. The evident purpose was to enable councils and taxpayers to see what the necessary cost of the work contemplated would be. Having this knowledge they could determine whether to undertake it or not. If they decided to undertake it, they could test the fairness and desirability of the bids by the particular estimate on their files, and accept or reject them accordingly. What quantity of Medina stone would be needed for the whole work? What would be the actual cost of it? What quantity of asphaltum would be needed for the carriage ways and what was its worth? What other materials would be required and what was their value? With these particulars, together with the amount and value of labor required in preparing the roadway, in setting the paving stones and in laying the sheet asphaltum, the actual cost of the paving could be estimated with substantial accuracy. The "approximate estimate" relied on by the city gives no single item. It does not give the value of any part of either work or materials necessary to the proposed improvement. It withholds every item of information the act required the city engineer to furnish, and gives in lieu the contractor's lump price for the finished pavement which includes curbing and grading as well as paving, and which distributes the total cost of all work and all materials over the surface of the finished roadway at a fixed price per foot.

It is easy to see, indeed it seems impossible not to see, that such a paper as was furnished by the city engineer in this case was without the slightest value to city councils, to lot owners or to taxpayers. It did not show the actual value, or the necessary cost of the work as a whole, or of any item of material or labor entering into it. It simply gave in advance the bidder's price without any means of testing its reasonableness. Whether that price was fair, or was twice or three times what it should be, no one can guess from the data furnished by the estimate. It will not do to say that the estimate was a substantial compliance with the law because it showed what the completed work could be furnished for. That could have been learned from the bidders just as well. But the law contem-

plated and provided for the want of knowledge on the part of councils and lot owners by calling to their aid a specialist, the city engineer, and requiring him to furnish them an estimate of the real value of the work they proposed "particularly stating the items and the cost of each " with sufficient certainty to enable them to discharge their own duties intelligently.

The regulation seems to us a wise one, but, whether wise or not, the law makers provided it, and the city engineer was bound by it.    Until the councils were in possession of his particular estimate they were absolutely without power to act in the premises because, as the Act of 1876 assumed, they were without the knowledge necessary to enable them to act wisely and guard effectively the city treasury and the lot owner.

We cannot see how the learned judge could well have reached any other conclusion than that on which the judgment in this case rested.    The law made the particular estimate a condition precedent to the adoption of an ordinance providing for the grading, paving or curbing of any street, lane or alley in any city of the third class.    The ordinance under which Eighth street was graded, paved and curbed was passed in plain violation of the law ; and the court properly held, in the luxuriant verbiage of the Act of 1876, that the ordinance so passed was " null and void and of no effect."

The judgment is affirmed.