Voss *v.* Reyburn.

Opinion delivered June 17, 1912.

1. MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICT—ORGANIZATION.—
Under Kirby's Digest, section 5666, providing that within twenty
days after the designation of an improvement district the clerk of the
city or town "shall publish the ordinance of the council establishing
the district in some newspaper published in said city or town for one
insertion, such publication of the ordinance of the council establishing
the district, as required by the statute, is mandatory and essential
to the creation of an improvement district. (Page 303.)

2. SAME—VARIANCE BETWEEN ORDINANCE AND PUBLICATION.—Where
an attempted publication of an ordinance creating an improvement
district omitted two half-blocks from the proposed improvement
district, the variance is material and destroys the validity of the
attempted organization. (Page 303.)

3. SAME—ILLEGAL ACTS—INJUNCTION.—To prevent a multiplicity of
suits, equity will enjoin the commissioners of an invalid improvement
district to prevent them from interfering with the work of another
and valid improvement district. (Page 303.)

Appeal from Pulaski Chancery Court; *John E. Martineau,*
Chancellor; affirmed.

STATEMENT BY THE COURT.

This is a suit by the Commissioners of Street Improve-
ment District No. 186 against the Commissioners of Street
Improvement District No. 157, seeking to have the appellants,
the designated Commissioners of Improvement District No.
157, "perpetually restrained from attempting to do any act
under color of any pretended office or authority in District
No. 157," and to have the assessment list in District No.
157 "declared null and void for the reason that the district was
never validly organized."

The complaint, among other things, alleged "that on
January 17, 1910, more than ten owners of real property in
the city of Little Rock presented a petition to the city council
of the city of Little Rock, asking for the grading and paving
with vitrified brick of West Twenty-third Street from the
west line of Main Street to the east line of Wolfe Street, and
praying that the following described property be formed into
an improvement district for this purpose." Here follows
a description of various lots and blocks, including, among
others, "north half of blocks 3 and 4, Clark's addition."

The complaint then proceeds to allege "that on January 27, 1910, the city council of the city of Little Rock passed an ordinance, intended to be in response to said petition, laying off a portion of the city of Little Rock into an improvement district for the purpose of grading and paving West Twenty-third Street, as prayed in said petition, and said ordinance was duly published in a newspaper published in the city of Little Rock, on January 31, 1910. Said ordinance gave the name of Street Improvement District No. 157 to said improvement district, and purported to describe the boundaries of said district by naming the property as described in the said petition; but in the publication of said ordinance it omitted to describe lots 1, 2, 3, 10, 11 and 12, in block 3, Clark's addition, and lots 1, 2, 3, 10, 11 and 12, block 4, Clark's addition to the city of Little Rock, which said lots were described in the petition praying that the district be created. With this exception, publication of said ordinance described the property as described in the said petition.

The complaint, after setting forth the appointment of commissioners for District No. 157, and assessors, and the filing of the assessment list of the district, then alleged that, for various reasons set forth in the complaint, District No. 157 was considered by the commissioners not properly organized, and alleged that "it was abandoned by the commissioners, the assessors, and the city collector," and then states that "all of the property owners who expressed themselves upon the subject desired that it be abandoned, so that a new district could be created," embracing practically the same territory. The complaint then alleged that District No. 157 was abandoned, and that District No. 186 was properly formed, and set forth the proceedings by which District No. 186 was created. The complaint then alleged as follows: "That recently the defendants claim that said District No. 157 was validly organized, and assert that District No. 186 has no valid existence, and by their attitude and conduct prevent the commissioners in District No. 186 from proceeding with the work, and their pretensions prevent said commissioners from receiving bids on contracts for doing the work and their borrowing money in order to hasten the work; and, furthermore, the said city collector and the other defendants herein, in asserting the liability of the

property owners in District No. 157 and in attempting to collect their assessments, have brought about a condition whereby the property owners in said District No. 186 will not pay either the assessment made in District No. 157 or in District No. 186, and in order for the commissioners to collect the assessments in District No. 186 it will be necessary that they bring a multiplicity of suits against said property owners, involving much vexation and unnecessary expense."

Then follows the prayer that District No. 157 be declared null and void, and for a restraining order against the appellants from proceeding, as above stated.

The answer admitted that the allegations of the complaint were true, except that the appellants denied "that Street Improvement District No. 157 was abandoned or intended to be abandoned by the commissioners thereof or by any material part of the property owners therein," and denied that "because of the matters set forth in the complaint said district was invalidly organized." Appellants also averred that, even if the district was invalidly organized, the appellees were not entitled to an injunction, as "both districts can exist and make the improvements prayed for in their petitions and make the assessments levied thereby."

*Bradshaw, Rhoton & Helm,* for appellant.

1. District 157 was legally organized, and has never been abandoned. Mere failure by the commissioners to let the contract, borrow money, etc., is no reason to declare the abandonment, as the commissioners could be compelled to proceed by mandamus. 28 Cyc. 1018; Kirby's Dig., § 5716; 42 Ark. 152; 71 *Id.* 9.

2. Inaccuracies in the publication of local improvement ordinances do not avoid the ordinance. 205 Ill. 346; 187 *Id.* 21. No objection was made within the time prescribed by law. Kirby's Dig., § 5678; 98 Ark. 543; 130 S. W. 513,; 28 Cyc 1135 and notes.

3. The burden was on appellees to show that a majority did not sign the second petition, as well as that the including or excluding of property was by fraud or mistake. 98 Ark. 543; 81 *Id.* 208; 52 *Id.* 107.

4. If the district was dead, no injunction will lie; if alive, the courts can not interfere.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

1.  District 157 was never validly organized; the defects were jurisdictional. 50 Ark. 126; 89 *Id.* 513; 86 *Id.* 1; 96 Ill. 369; 50 Cal. 11; 17 Ind. App. 324; 96 Ill. 369; 7 Mackey 94; 169 Ill. 286; 51 Cal. 307; 175 Ill. 575, 584; 107 La. 657.

2.  Valid publication is a prerequisite to a valid organization. Kriby's Dig., § 5666; Wade on Notice, § § 1030, 1059; 58 Cal. 237; 97 Ind. 90; 134 Ill. 330; 25 N. E. 995; 116 Cal. 470-2.

3.  The district was abandoned. 71 Ark. 4; 94 *Id.* 49.

WOOD, J., (after stating the facts). In the petition for an ordinance designating District No. 157 the north half of blocks 3 and 4, Clark's addition, are embraced and so described, but this property is not embraced in the publication of the ordinance. Section 5665 of Kirby's Digest provides that when any ten resident owners of real property in the city shall petition the city council to take steps towards the making of any local improvement it shall be the duty of the council to lay off the improvement into an improvement district, "designating the boundaries of such district so that it may be easily distinguished;" etc. Section 5666 provides that "within twenty days after the designation of such district or districts the clerk of said city or town shall publish the ordinance of the council establishing the district in some newspaper published in said city or town, for one insertion."

The publication of the ordinance of the city council establishing the district as required by this statute is mandatory and essential to the creation of a local improvement district, as held in *Crane* v. *Siloam Springs,* 67 Ark. 30, 43. In that case Judge RIDDICK, speaking for the court, said:

"We can not concur in the contention that the requirement of the statute that the ordinance creating the district shall be published within five days after its passage is not mandatory. The intention was that the owners of real estate to be affected should have early notice of the creation of the district and of the scheme to levy assessments upon their property. The statute does not permit a majority in value of the owners of land in the district to come in and by one petition procure an ordinance establishing a district and levying an assessment for erecting the improvements. It requires that the ordinance

creating the district and indicating the contemplated improvement shall be first passed, and notice of its passage given by publication within five days.   It is important that this notice should be given in the manner and within the time prescribed by the statute; for it is in the nature of a warning to all owners of land in the district that a proceeding of that kind is on foot. So that if they wish to oppose the undertaking they may at the beginning, before public sentiment in regard thereto has become fixed, have an opportunity of discussing the question with other owners of land in the district, and, if the undertaking be unwise, perhaps defeat it by securing a majority in opposition to it.   Failing in this, they can still be on guard, and watch the proceedings leading up to the assessment, to see that they are regular and in conformity with the law. We think, for these reasons, that the provision as to the time of the publication is for the benefit and protection of the land owners of the district, and must therefore be treated as mandatory.

"The complaint alleged facts showing that the ordinance establishing the district was not legally adopted, and not published within the time and in the manner required by law.   It therefore stated a good cause of action, and the demurrer should have been overruled."

The statute under consideration and that passed upon in *Crane* v. *Siloam Springs, supra,* are the same except as to the time for the publication of the notice.   The statute has been changed since the above decision so as to require the publication to be made within twenty days, instead of five. Act of May 3, 1901.

The omission from the publication of the ordinance designating the district of the half of two blocks, containing twelve lots, is so material and important a variance from the petition and ordinance as passed as to destroy the validity of the attempted organization of the district.   It was, in legal effect, no publication at all, and did not comply with the statutory requirement.

The object of designating the boundaries of the district was to enable the property owners included therein and affected thereby to easily ascertain what property was included in the district.   The owners of these lots, if they were to be included

in the district, had a right under the law to be notified thereof so that, as was stated in the above case, if they wished to oppose the undertaking, they might do so at the beginning, "before public sentiment in regard thereto had become fixed," and "have an opportunity of discussing the question with other owners of land in the district," and "perhaps defeat it by securing a majority in opposition to it."

It would be very unjust to property owners to include them in the district without giving them the opportunity, if they deemed it unwise, to protest against it and to endeavor to convince and persuade their neighbors of its inexpediency. This right is intended to be guaranteed to every owner of land in the district by the statute under consideration.

The publication of this notice in the manner prescribed by the statute is jurisdictional, and the district is not created without it. As is said by the Supreme Court of California, in *Williams* v. *Board of Supervisors,* 58 Cal. 237: "The statutory publication was one of the jurisdictional steps in the proceedings; and as the petition in question was not published in accordance with the requirement of the statute, all of the subsequent proceedings were invalid."

Other authorities to the same effect as the case above mentioned are cited in appellees' brief, but the question is ruled by our own decision in *Crane* v. *Siloam Springs, supra.*

Since District No. 157 has no valid existence, the allegations in the complaint as set forth in the statement showing that the appellants are nevertheless attempting to interfere with the appellees as commissioners of District No. 186 in proceeding with their work, and the necessity of the injunction in order to prevent a multiplicity of suits, were sufficient to give the chancery court jurisdiction. The judgment is correct, and it is affirmed.